Report of Committee Presented.
Assembly Chamber, April 17, 1871.
Mr. E. H. Woods, from the committee on privileges and elections, submitted their report in writing relative to the contested seat of Wm. *423 0. Ii. Sbemian, by George IL Smith, contestant, which on his motion was laid on the table and ordered printed, and made a special order for Wednesday next, immediately after the reading of the Journal. See Assembly Journal, 1868, page 1108.
KepORTS CONSIDERED.-Mr. ShERMAN AWARDED SEAT.
Assembly Chamber, April 22, 1868.
Fir. F. H. Woods, called up for consideration-, the following report of the committee on privileges and elections, bein<>- the special order for the day.
April 15, 1868.
Your committee directed the contestant and sitting member respectively to file and serve allegations, in which the points at issué were definitely settled; and being attended by the parties and their counsel, proceeded to take testimony upon the points presented, which testimony was mostly confined to the proceedings of the board of county canvassers, as to the votes given at the poll of the fourth ward of the city of Newburgh. -And, on the part of the contestant, it was proved that the board of county canvassers of the county of - Orange, upon proofs by affidavits of the falsity of the certificates, excluded from the canvass made by them the votes returned by the inspectors for such fourth ward for member of Assembly, and certified the vote of the whole Assembly district at two thousand nine hundred and sixty-three (2,963) votes for William O. H. Sherman, and two thousand nine hundred and forty-two (2,942) for George Ii. Smith.
The certificate thus rejected by the board of county canvassers stated that William C. H. Sherman received two hundred and thirteen votes, and that George K. Smith received three hundred and twenty-four votes in the fourth ward of the city of Newburgh. And it was claimed by the contestant that the votes thus certified ought to have been counted by the county canvassers, which would have given to the contestant a majority of ninety-votes in the Assembly district.
The contestant further claimed that the county canvassers having erred in excluding these votes, it was the duty of your committee to receive no further evidence, but to report that the contestant ivas entitled to his seat.
Your committee, after mature deliberation, decided that it . ought n.ot to close the investigation at this stage; that whether the board of county canvassers was right or wrong in its decision was not the *424 question referred to your committee, but that tbe question to be reported upon was, which candidate was actually elected; and that that question could only be decided 'by taking testimony, for the purpose of ascertaining how many votes were actually taken and canvassed for each candidate at the poll of the fourth ward of the city of Newburgh. That was the question put in issue between the parties, and the one upon which alone the right to the seat was to be determined. All the evidence offered on both sides was accordingly taken, for the purpose of proving what took plaee at the counting and canvassing of the votes. It was proved that after the poll had been closed, the inspectors, aided by the clerks, proceeded to count the votes, beginning with the State ticket, taking next the judiciary, and last the votes for member of Assembly. Each counted the portion of ballots allotted to him, and gave the result of his count to John W. Little, one of the clerks, who footed the whole on his tally sheet and announced the several results to the board in their presence, and in the hearing of bystanders in an adjoining room. Such announcement showed two hundred and sixty-seven votes for Mr. Sherma.n and two hundred and sixty-three votes for Mr. Smith. (Testimony of Little, page 50.) And the same result, as to Assemblyman, was afterward stated by Mr. 'Wiltsie, one of the inspectors. Surprise having been expressed at the result, Mr. Booth, another inspector, suggested that the ballots should be counted again, but Mr. Wiltsie said there was no necessity for counting the ballots again, for Mr. Sherman had four majority (page 51). That Mr. Little went through the figures two or three times, with the help of Mr. Wiltsie and Mr. Thorn, also an inspector, looking over his shoulder, and that the result was found to be accurate and entered upon the tally sheet; that the tally sheet contained the names of all the candidates, -with the number of votes opposite each name (page 51).
That these numbers, viz., two hundred and sixty-seven for Mr. Sherman, and two hundred and sixty-three for Mr. Smith, were the numbers actually ascertained and entered upon the tally sheet, is placed beyond controversy by the fact that at the time of the completion of the tally sheet, Mr. Little copied from it, and upon a complete set of the straight tickets, all the results, placing the number of votes received by each candidate opposite his name. These tickets he had carefully preserved, and he produced them before the committee (pages 52, 68J), and they are annexed to this report (page J8).
That two hundred and sixty-seven votes were counted and *425 announced for Mr. Sberman, and two hundred and sixty-three votes for Mr. Smith, is also proved by Mr. Thorne, an inspector (page 33), and by Mr. Hearne (page 42), who got these figures from Mr. "Wiltsie after the canvass and before the certificate was made out, and sent them to the head-quarters of one of the political parties (pages 42 and 43), and by Mr. Chrissey, one of the clerks of the election (pages 60 and 61). It is also proved by different witnesses, that after the result was ascertained, it was announced by those engaged in the canvass that Mr. Sherman was “four ahead,” or had “four majority” (pages 33, 43, 51, 60, 61). In the face of all this testimony, it appears that in the certificate which was made out and signed by the inspectors, it was stated that Mr. Smith received three hundred and twenty-four votes, and Mr. Sherman two hundred and thirteen votes, and the mistake, if it was such, occurred in the following manner: Mr. Little commenced filling up the certificate; but, before proceeding far with it left the .room, after handing his tally sheet to Mr. Wiltsie. Thereupon, Mr. Booth proceeded to fill up the certificate, Mr. Wiltsie calling off the numbers for that purpose from the tally sheet. It seems Mr. Wiltsie called off three hundred and twenty-four votes as having been given for Mr. Smith, and two hundred and thirteen votes for Mr. Sherman. After the certificate was filled up it was signed by all the inspectors. Mr. Thorne says he was engaged in conversation with Mr. Chrissey at the time, and, did not hear the result called off by Mr. Wiltsie for member of Assembly, and that he would not have signed the certificate if he had not supposed the numbers inserted were two hundred and sixty-seven and two hundred and sixty-three (page 33).
It is true, Mr. Booth and Mr. Wiltsie both swear to having seen the tally sheet at the 'time the results were furnished by the latter to the former for the purpose of being entered in the certificate, and that they think they were correctly called off. But this weighs but little against the very clear and unanswerable evidence of the other witnesses, and of the copy of the tally sheet itself. It is most charitable to suppose that the figures they saw, and which Mr. Wiltsie called off, were those belonging to other candidates; for it is a singular fact, if not a controlling one on this point, that it happens that three hundred and twenty-four votes were, as appears by the copy of the tally sheet, given for David J. Gedney, the republican candidate for county judge, and two hundred and thirteen votes were given for Lewis Little, a democratic candidate for coroner, and it may have *426 happened that in the haste of referring to the tally sheet.the wrong numbers were seen and called off (page 78).
That the numbers actually called by Mr. Wiltsie and inserted by-Mr. Booth in the certificate, were not those belonging to the candidates for member of Assembly, seems to your committee to be established by Wiltsie himself, who, though with reluctance previously manifested, testified, on page 18 of the evidence, as follows:
“Allow me toi correct myself. ' I do remember hearing Mr. Little say that Sherman had four majority, or was fov/r ahead; whether it was four majority or four ahead, I don’t know, but I know that was said.” And he testified, on page 22, that this was said at the close of the computation of the vote for Assembly. This expression can be reconciled only with the figures stated by Mr. Little, which showed Mr. Sherman had four more votes than Mr. Smith. It was applicable to no comparison with any other candidate.
The democratic candidate for Secretary of State had two hundred and eighteen votes. The republican candidate for that office had three hundred and thirty-one votes. If Mr. Sherman had two hundred and sixty-seven votes, he had therefore,-’ forty-nine votes more than the former, and sixty-four less than the latter (page 18). That Mr. Sherman ran ahead of his ticket is in proof (page 56), and it was shown that sixteen republicans had made affidavit that they voted for him (page 57); yet, the number of votes given to him by the certificate as filled up by Mr. Booth, was the lowest of all the nineteen democratic candidates voted for at that poll, except two (page 78). In every respect in which your committee have been able to view the evidence, the conclusion seems irresistible that the number of votes for the respective candidates were two hundred and sixty-seven and two hundred and sixty-three, and not the number stated in the certificate signed by the inspectors.
Heither Mr. Wiltsie nor Mr. Booth profess to have any knowledge on the subject of the-number of votes taken, except what is derived from the tally sheet; and inasmuch as the witnesses on both sides refer to the tally sheet as furnishing the true figures, and the only question is as to what these figures were, there is a natural desire to find the tally sheet, that it may speak for itself. But it is shown by the evidence that the tally sheet as well as the Assembly ballots were taken in charge by Mr. Wiltsie, and ■ were by him destroyed about ten o’clock in the forenoon of the next day (pages 20 and 21).
Thus, by no agency of Mr. Sherman’s friends, but by the act of *427 the same person who furnished the figures to Mr. Booth to insert in the certificate, and who is now called as the chief witness against him, was the best evidence for correcting the error destroyed. •
It seems to your committee fortunate for the ascertainment of truth, that a copy had been kept by Mr. Little.
At a late stage of the session, the contestant asked your committee to adjourn to Newburgh and examine the persons who had voted at the election, for the purpose of proving for whom their votes were cast.
After careful consideration your committee came to the conclusion, that such testimony, judging from some of that description already taken (page 31), would be of a far less satisfactory character than that relative to the counting of the ballots. The fact that many voters do not look at the inside of the folded ballot stands in the way of giving positive evidence as to the persons voted for, and the impossibility of finding all the voters in the city district, when the population is undergoing a constant change, would present another obstacle in the w7ay, by no means inconsiderable; and your committee do not believe that the evidence of the voters, proposed to be taken, could in any event outweigh the very clear and satisfactory evidence of the tally sheet as to the number of f otes actually taken and canvassed.
Your committee conclude, therefore, that, in addition to the votes allowed by the board of county canvassers, Mr. Sherman received in the fourth ward of the city of Newburgh two hundred and sixty-seven votes, Mr. Smith received two hundred fend sixty-three votes, and that in the first Assembly district of the county of Orange William G. H. Sherman received, for the office of member of Assembly, three thousand two hundred and thirty (3,230) votes, and that Geo. K. Smith received, for the same office, three thousand two hundred and five, (3,205) votes, and that accordingly William C. H. Sherman was duly, and by a majority of twenty-five votes, elected a member of Assembly for said district.
Dated Albany, April 15, 1868.
P. H. WOODS.
J. A. SUMNER. •
JOHN B. MADDEN.
JAMES LOUGHRAN.
Mr. Pitts, from the minority of said committee, submitted the following report:

*428
To the Assembly :

The undersigned, of the committee on privileges and elections, in the case of George K. Smithy Esq., contesting the seat of ELon. William Sherman, of the first Assembly district of the county of Orange, respectfully dissents from the report of a majority of the committee.
It will be remembered that the contestant filed his petition claiming the seat now held by the sitting member at an early day in the session, alleging among other reasons, that the board of county canvassers had arbitrarily rejected the entire vote of one of the election districts in said Assembly district, thereby unjustly and illegally depriving him of his seat.
The counsel for the contestant raised the question before the committee, that the board of supervisors had no authority to reject the vote of such district, and the committee adjourned to consider and decide such question. The undersigned carefully examined the law and decisions of the courts bearing upon such question, and came to the conclusion that the certificate of election was wrongfully and illegally awarded to Mr. Sherman, and that the board oí county canvassers had no authority to reject the vote of any election district when the returns were regular and valid upon their face.
In this case the said canvassers met, and upon one day allowed the vote of such district, and the next day rejected the same, thereby electing Mr. Sherman in place of Mr. Smith. There is no doubt, as a question of law and justice, Mr. Smith was entitled to the seat in this House, and Mr. Sherman should have been the contestant. The -committee never decided this question, but evaded its decision, and directed that the hearing should proceed, and that Mr. Smith must ■prove his right to the seat by proof other than the returns and the evidence of the voters. , The contestant proceeded and introduced a portion of his evidence, and was proceeding to prove that he was legally elected, by swearing the persons who cast their votes for him; and a majority of the committee refused to hear 'such testimony, and made an order reciting that the case should be confined to proof of what took place at the polls, but that they would not hear the evidence of the voters.
In the case of Clausen v. Yan Brunt, the sitting member was deprived of his seat by evidence of the voters against the sworn officers who conducted the election ; but in this case, the committee refused to hear the very same kind oí evidence, upon which they had *429 acted in unseating Mr. Yan Brunt, who was a member of this House. In this action of the committee the undersigned could not concur, and its direct effect was to deprive the contestant of the right and privilege accorded to the meanest criminal in the most inferior court of justice, tile right of proving his case and having the proof considered.
Upon the proof received, limited as it was by the action of the committee, I do hot see how it can be found, as a question of fact, that Mr. Sherman was elected.
Two of the inspectors, who are reputable business men, testify positively that Mr. Smith received a majority in the fourth ward of the city of Newburgh, that being the election district in question; and the other inspector, who was a coarse, vulgar man, and whose evidence was interlarded with oaths and violent language, attempts to swear that Mr. Sherman received the majority. This last impostor, named Thorn, is not entitled to any credit, and I affirm that no intelligent jury would believe him for a moment; and from his manner of testifying, would at once set him down as an unreliable and unworthy man. The remainder of the evidence is about evenly balanced. By every principle of law, the inspectors should be sustained, unless positive proof is introduced showing them guilty of fraud or a mistake. It is extremely dangerous to set aside the election returns upon outside evidence against the sworn testimony of the inspectors.
The evidence in this case satisfies me that Mr. Smith was legally elected, and is entitled to his seat; and he has a reasonable right to complain at the action of the committee in refusing to hear his proof. The precedent established in this House by this committee in the case of Mr. Yan Brunt, justifies him in believing his case was to be heard; and when you add to thj.s the positive order of the committee, that he must swear the voters, it forces the conviction upon a candid mind that Mr. Smith has been unfairly treated. I had hoped for the dignity and honor of this House that this case would be decided upon the law and the evidence, but the report of the majority of the committee satisfies me that it is to be disposed of upon partisan grounds. I therefore recommend the adoption of the following resolution :
Resolved, That George K. Smith, Esq., was duly elected member of Assembly from the first Assembly district of the county of Orange, at the last general election, and is entitled to the seat now held by Hon. William 0. IT. Sherman upon this floor.
All of which is respectfully submitted.
April 22, 1868. EDMUND h. PITTS.
*430 Mr. Pitts moved to substitute the report of the minority for that of the majority.
Mr. Speaker put the question whether the House would agree to said motion, and it was determined in the negative.
Mr. Speaker then put the question whether the House would agree to said majority report, and it was determined in the affirmative.
Ayes, 65. Noes, 44.
Assembly Journal, 1868, vol. 2, pages 1240 to 1246.